

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the order of the Court.**

**Signed March 13, 2006**                                **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:                          §
                                §
JULIE NEWMAN,                   §   CASE NO. 05-35957-RCM-7
                                §
    D E B T O R(S).             §

**MEMORANDUM DECISION**

Before the court is the motion of the United States Trustee (the "Trustee") to dismiss under 11 U.S.C. § 707(a) and (b). This is a core proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). This memorandum contains the court's findings of fact and conclusions of law under Bankruptcy Rules 9014 and 7052.

Julie Newman, an unmarried debtor (the "Debtor"), aged 57, filed this voluntary Chapter 7 petition on May 31, 2005. Her schedules were signed and filed on May 31, 2005 (Ex. A) and her Schedule I showed Debtor to be unemployed. After agreed extensions, the Trustee's § 707 motion to dismiss was filed on

November 16, 2005.

On February 24, 2006, Debtor filed amendments to her Schedules I and J and showed her current income, including employment by Oracle. Debtor stated in an addendum to such amended Schedules I and J:

> The attached amendments to Schedules I and J are filed for the purpose of showing the income and expenses of the Debtor as of February 24, 2006 in connection with the Motion to Dismiss pursuant to Section 707(b) of the US Bankruptcy Code that is set for hearing on Friday March 3, 2006. They are not intended to change the information contained in the Schedules I and J originally filed with the Court, which reflects the income and expenses of the Debtor as of that date.

(Ex. 4.)

Debtor's initial May 31, 2005 schedules listed her marital status as single with no dependants. Her continuation sheet number one to the initial Schedule I stated: "Debtor has closed down unprofitable book business and has interviewed for reemployment and is hoping to receive and accept an offer in the near future. Previous salary yielded take-home of approximately $6,000 per month. Expenses assume . . . ." (Ex. A.) The statement ended abruptly.

In the initial schedules, Debtor listed her 2005 gross year to date income (January 1 - May 31, 2005) as $108,931 or $21,706 monthly. *See* Statement of Financial Affairs ("SOFA") Question One. Such question also listed Debtor's 2004 income at $252,059 and her 2003 income as $259,540. The status of this income,

*i.e.*, gross or net, was not shown in SOFA question one. This income related to the time she was in the internet book selling business.

Debtor listed a $326,989 secured debt on her homestead, which she valued at $320,000. (Ex. A.) She bought her home for $363,000 and eighty-five percent of it was financed. She has two mortgages on the home. On Schedule J, she listed $1,765 as a monthly mortgage payment with $604 for the second lien payment. These figures do not include taxes or insurance.

Her car is eight years old and is paid off. Her insurance costs on the home average out at $150 per month, and her property taxes average out at $638 per month.

Debtor claimed portions of her home were used in her business[1] for characterization of debt purposes (*i.e.*, under § 707(b) in determining whether her debts are "primarily consumer debts").

In trial testimony, Debtor contended that she used fifty percent of her home for business purposes, however, on her tax return, she claimed thirty percent of her home was used in business.

The parties entered into the following stipulations:

1. Debtor was an employee of I2 Technologies at the time

---

[1] The heaviest use of her home in her business was before bankruptcy when she was in the internet business of selling books.

her home, located at 2807 Welborn, was purchased and the mortgage on her home was incurred.

2. Debtor's online book business did not exist at the time her home, located at 2807 Welborn, was purchased and the mortgage on her home was incurred.

3. Debtor's most recent pay stub from Oracle, dated February 16, 2006, reflects gross annual income of $111,100.

4. Debtor's most recent Oracle pay stub, dated February 16, 2006, reflects gross monthly income is $9,652.

5. Upon accepting employment with Oracle, Debtor chose to make voluntary contributions of six percent per paycheck to a 401(k) plan. In December 2005, Debtor's 401(k) contributions were $277.75 per paycheck or approximately $554 monthly. Debtor increased her voluntary 401(k) contributions to ten percent in February 2006 and estimates monthly contributions will total $925 (*i.e.*, a difference of $371 per month).

6. Property taxes for 2005 totaled $7,657. On January 13, 2006, Debtor made a payment of $5,658 to the Dallas Tax Assessor's office for a partial payment on 2005 property taxes.

7. Debtor made postpetition payments of no less than $2,000 to her sister, Jill Ribich, on account of prepetition business debts incurred by Debtor:

    a. on line payment of $1,000 on August 19, 2005

    b. $1,000 check dated July 24, 2005.

Exhibit B showed that during the period of April 22, 2004 through May 20, 2005, Debtor transferred $77,994 from her business account at Compass Bank to her personal account for living expenses. This was a monthly average of $6,499.50 that she spent for living expenses.

Before the trial began, the parties agreed that they would temporarily stop the trial after the court heard the testimony on whether Debtor's debts were "primarily consumer debts" within the meaning of § 707(b). The Trustee conceded that if at such point the Trustee had not proved that Debtor's debts were primarily consumer debts then the Trustee's § 707(b) motion should be dismissed. After such temporary halt of the trial, the court did hold, through findings made on the record, that Debtor's debts were primarily consumer debts within the meaning of § 707(b). Such findings and conclusions made on the record are adopted and incorporated herein by reference.

### Debtor's Employment

Debtor's main expertise is in the technology retail services business. By letter of May 24, 2005 from Retek, Debtor was offered the position of Project Manager-Services in Retek's Ninth American Services Business Unit (Ex. E) with a salary of $9,166 per month (equivalent to $110,00 annual pay).[2] Such letter further states, in part: "[W]e would like you to begin work with

---

[2] Note Stipulation 3 states annual pay equivalent to $111,100.

Retek on June 6, 2006 [later context of letter shows Retek meant June 6, 2005] . . . ." The letter points out that the employment is at will and that Debtor could be terminated at any time with or without cause.

The letter further states:

Julie, we sincerely appreciate your interest in Retek and hope you will accept our offer. We are tentatively:

• **Preparing facilities and equipment for you based on this June 6, 2005 start date;**

• **Registering you in Retek's orientation program on June 6, 2005;**

On June 6, 2005, please come to 950 Nicollet Mall, Minneapolis, MN 4th floor reception area by 8:30 A.M. and let the receptionist know you are here for the new employee orientation. Also upon your hire and start date, you will be required to provide the Company with the legally required proof of your identity and authorization to work in the United States. Please bring appropriate documentation with you on your date of hire. If you are unsure of what constitutes appropriate documentation, please review the enclosed Federal I-9 instructions and come prepared.

**If you cannot start on June 6, 2005, please contact Dawn Wampole at 612-587-2425.**

Such letter contained an exhibit showing it was signed by Debtor on June 1, 2005 and contained in part the following:

Julie, if you wish to accept this offer, please sign and date this letter and the enclosed agreements, and return all pages of the:

Offer Letter;

....

Arbitration Agreement;

....

Form W-4 (2004) and;

....

Employment Contact Information.

.... in the enclosed envelope.

We must receive the <u>original</u>, signed documents referenced above at our Minneapolis headquarters office no later than June 3, 2005. You should keep one copy of this letter for your own records. This offer will expire on June 3, 2005 if not accepted.

Debtor contends she received this proposal on June 1, 2005 and signed it on such date. She testified that she Fedex'ed her response to Retek on June 1, 2005. *See* Ex. 7.

May 24, 2005 was a Tuesday and June 1, 2005 was a Wednesday. Monday May 30, 2005 was the Memorial Day Holiday. Notwithstanding Debtor's testimony, it is not credible that it took five business days for this letter to reach her or that she did not know of its contents until June 1, 2005, *i.e.*, the day after she signed and filed her petition on May 31, 2005. It appears that she received this May 24, 2005 letter or knew of its contents on or before May 31, 2005.

Thereafter in June 2005, Retek was bought out by Oracle. *See* Ex. E. Debtor signed a contract with Oracle on June 21, 2005, for the same monetary amounts as in her Retek contract (Ex. E). She is still employed by Oracle, although she is concerned

about a number of layoffs by Oracle (Ex. 6)[3] and whether she will be affected.

## Totality of the Circumstances

Generally, in construing 11 U.S.C. § 707(b), the courts in the Northern District of Texas have relied upon the totality of circumstances test. *In re Carbaugh*, 299 B.R. 395 (Bankr. N.D. Tex. 2003); *In re Rubio*, 249 B.R. 689, 695 (Bankr. N.D. Tex. 2000).

Debtor did not engage in eve of bankruptcy purchases. Debtor's budget will be discussed more fully hereafter. Debtor is eligible to file Chapter 13. Debtor was not forced to file because of unforeseen or catastrophic events. When she initially consulted bankruptcy counsel, she was concerned about the wind down and closing of her internet book business because of its lack of growth and the fact that in early May 2005, she had been trying to get a job without success.

Both sides have extensively discussed the recent bankruptcy decision of *In re Cortez*, No. 04-42750, slip op. (Bankr. N.D. Tex. Nov. 5, 2004), *rev'd by* 4:05-CV-028-A, slip op. (N.D. Tex. Mar. 9, 2005). In the bankruptcy court, the court denied the United States Trustee's motion to dismiss the case under § 707(b). *Id.* at 10. In such case, the debtor received an offer

---

[3] Exhibit 6, dated June 14, 2005 and February 10, 2006, shows that Oracle was laying off 5,000 employees in June 2005 and 2,000 employees in February 2006.

of employment shortly after the petition date. *Id.* at 2. The court found that Mr. Cortez's employment was a postpetition event that was not in prospect on the petition date and that debtors did not have the ability to make significant payments to creditors. *Id.* at 11. However, the court pointed out:

> For example, if the evidence in the case at bar had established that Mr. Cortez reached an oral agreement to begin employment at his current position prior to the Petition Date, or received a formal letter offering the position prior to the Petition Date, it would be proper to consider his current employment in deciding whether Debtors possess the ability to repay creditors. Factoring Mr. Cortez's employment into the court's decision in such a scenario would be appropriate because the prospective employment would have been a fact as of the Petition date.

*Id.* at 9.

The district court in *Cortez* framed the issue on appeal as "whether the bankruptcy court was correct in concluding that it could only consider circumstances actually existing at the petition date in ruling on an 11 U.S.C. § 707(b) motion." 4:05-CV-028-A, slip op. at 3 (N.D. Tex. Mar. 9, 2005). The district court reversed the bankruptcy court holding that the bankruptcy court should have considered the postpetition changes in debtor's income level. *Id.* at 6. The district court further found the bankruptcy court should have granted the United States Trustee's motion to dismiss. *Id.* The court then remanded the case to the bankruptcy court directing that the case be dismissed or at the debtors' option be converted to Chapter 13. *Id.* at 7. The

district court opinion is currently on appeal to the Fifth Circuit.

For the reasons previously stated and findings made, it appears that under both the bankruptcy court and district court opinions in *Cortez*, Debtor's employment contract, signed June 1, 2005, would be relevant to the § 707(b) analysis.

The Bankruptcy Abuse Prevention and Consumer Protection Act did amend § 707(b), but the revised statute does not address the issue of whether a court should consider postpetition events in evaluating a motion to dismiss under § 707(b).

Debtor has the ability to pay a significant amount to her unsecured creditors in a Chapter 13 case.

Debtor's voluntary contributions to her 401(k) retirement plan, beginning in December 2005 at $554 per month and raised in February 2006 to $925 per month (a difference of $371), are not reasonably necessary for her maintenance and support, *In re Rathbun*, 309 B.R. 901, 905 (Bankr. N.D. Tex. 2004); *In re Ferguson*, 295 B.R. 96, 99 (Bankr. S.D. Tex. 2003), and such amount is regarded as disposable income available to pay her debts.

Some courts have held that postpetition contributions to a retirement plan are not per se improper, but need to take into account the debtor's age and circumstances. *See, e.g., In re Hill*, 328 B.R. 490, 495 (Bankr. S.D. Tex. 2005); *In re Mills*, 246

B.R. 395, 401-02 (Bankr. S.D. Cal. 2000). In this later case, the debtor was fifty-six years of age.

In the present case, Debtor apparently did not make any substantial retirement plan contributions until she was in bankruptcy[4] and started with contributions in June 2005 of $554 per month (*i.e.*, six percent contribution) and then raised it to ten percent or $925 per month in December 2005.

As will be discussed hereafter, it appears that even if Debtor were allowed to make a 401(k) contribution of $925 per month, she would have disposable income available of over $700 per month to make a substantial payment to her unsecured creditors.

Debtor admitted that her expense in Exhibit J for $166 per month was a duplication. Therefore, it is part of her disposable income available to pay creditors.

Debtor's original Schedule J of May 31, 2005 showed current monthly expenses of $6,948. Her February 24, 2006 amended Schedule J showed current monthly expenses of $7,537, a difference of $589.

In her original Schedule J filed in May 2005, she showed the following expenses, among others, which were raised in her February 24, 2006 amended Schedule J.

---

[4] Debtor's May 31, 2005 Schedule J did not show any monthly retirement plan contributions, although she exempted an IRA of $950 with a broker.

| 5/31/05 Schedule J Nature of Monthly Expense & Amt. | 2/24/06 Schedule J Amended Amt. (Ex. 4) | Difference | Amount Found Excessive |
|---|---|---|---|
| 1. Home Maintenance: $ 50 | $ 150 | $ 100 | at least $ 50 |
| 2. Clothing: $150 | 300 | 150 | at least 150 |
| 3. Medical & Dental not covered by insurance: $350 | 562 | 212 | |
| 4. Personal Expenses: $390 | 2,116 | 1,726 | at least 350[5] |

The following personal itemized expense amounts were found excessive as listed on the February 24, 2006 Amended Schedule J:

| Expense | Amount Listed | Excessive Amount |
|---|---|---|
| Pet care including boarding | $207 | at least $100 |
| Hair, cosmetics, allergy medicine, vitamins | 335 | at least 150 |
| Gifts to family | 150 | at least 100 |
| Total | | $350 |

Aside from the $925 401(k) postpetition monthly expense, the foregoing excessive monthly expenses detailed above amount to

---

[5] Discussed hereafter.

$717 when the $166 duplicate expense previously discussed is considered.

Under the circumstances of this case, it appears that Debtor would have sufficient monies legitimately available to fund a three year Chapter 13 plan making a significant payment to her unsecured creditors. Thus granting of Chapter 7 relief to Debtor would constitute a substantial abuse of the provisions of Chapter 7 even though generally Debtor had exhibited good faith and honesty in filing.

This case will be dismissed if Debtor does not convert to Chapter 13 within ten days of entry of an order on this opinion.

###END OF MEMORANDUM DECISION###